LEMMON, Judge.
In this suit Ernest Homer seeks Workmen’s Compensation benefits from his former employer, Mississippi River Grain Elevator, Inc., and its insurer, American Employers Insurance Company. The trial court dismissed Homer’s suit, and he appealed.
The clalim is brought under R.S. 23:1031.1, pertaining to occupational disease. In pertinent part that statute reads:
“A. Every employee who is disabled because of the contraction of an occupational disease as herein defined * * * shall be entitled to the compensation provided in this Chapter the same as if said employee received personal injury by accident arising out of and in the course of his employment.
“B. An occupational disease shall include only those diseases hereinafter listed when contracted by an employee in the course of his employment as a result of the nature of the work performed. * * *
“(6) Pneumoconiosis.”
Homer contends that he is disabled because he contracted pneumoconiosis in the course of his employment as a result of repeated exposure to grain dust in the performance of his duties.
Homer first suffered from pulmonary problems in 1960 after exposure to gypsum dust while employed at another industrial plant. He obtained relief after treatment and subsequent outdoor employment in a dust free atmosphere.
Homer had been a patient of Dr. Frank Wagner, a general practitioner, since 1963. In 1965 Homer first consulted Dr. Wagner for pulmonary problems, with a complaint of asthma for one day, brought on by a change in the weather. He did not consult Dr. Wagner again for pulmonary problems until after he began working at the Mississippi River Grain Elevator in October, 1967 as a tractor driver. The tractor was used to push residual grain inside a barge into “marine legs” for loading onto a conveyor. In performing these duties the driver necessarily became covered with dust. Because Homer’s asthmatic condition was aggravated in this job, he was *248 shortly thereafter assigned at a lower rate of pay as foreman of a labor gang. One of the daily duties of the gang was cleaning the dust filters by manually shaking them. This and other exposure to dust, particularly soy bean dust, caused Homer to again seek medical attention from Dr. Wagner on May 2, 1968. He improved with therapy, but again consulted the doctor in August and October with the same complaints. In November he was hospitalized for seven days, the diagnosis being listed as acute bronchitis, pneumoconiosis and emphysema. During the hospitalization a pulmonary function study was performed, and the results indicated decreased function. Upon discharge Homer was allowed to return to work, but was advised to refrain from dust exposure and to continue prescribed medication. However, in December he was again hospitalized after exposure to soy bean dust.
When he returned to work after the second hospitalization, he was assigned duties as a truck driver, in which much of his time was spent away from the plant and his exposure to grain dust was minimized. During 1969 he consulted Dr. Wagner four times for pulmonary problems, complaining on the July visit of exposure to soy bean dust for five minutes while wearing a mask.
On February 20, 1970 Homer was terminated from his employment at the grain elevator because he missed three days of work without authorization. This suit was filed on April 27, 1970. Homer continued under treatment by Dr. Wagner for the asthma condition, and in July, 1970 was referred to Dr. Morton Ziskind, a specialist in the field, who had performed the pulmonary function study during the 1968 hospitalization. Dr. Ziskind performed additional clinical and laboratory studies and was still treating Homer at the time of trial.
However, Dr. Ziskind did not testify at trial, although his medical report was introduced into evidence by stipulation. The report stated that the medical evidence demonstrated the presence of chronic bronchial asthma, with recurrent episodes of airways obstruction aggravated by exposures to dust, allergens and heavy exercise. Dr. Ziskind further stated:
“This allergic obstructive disorder is responsible for Mr. Homer’s disability to continue to work at the grain elevator and the difficulties that he has in performing heavy physical exertion. If employment can be obtained in a relatively dust free atmosphere which imposes only moderate load upon his ventilatory reserve, he probably will be able to perform regular work. Because of the asthmatic nature of his illness, he requires regular treatment with oral and aerosol bronchodilators. If these medications fail to prevent development of episodes of bronchospasm, it is likely that small doses of adrenal corticoids will control his asthma. The prognosis for Mr. Homer appears fair if his spasms of asthma can be controlled.” (Emphasis supplied.)
On appeal, Homer contends that the record established that he had contracted pneumoconiosis, a disease listed in the statute, since this disease was diagnosed by Dr. Wagner on several occasions. On the other hand, defendants contend that the doctor in testifying referred to pneumoco-niosis not as the specific disease, but as the physical condition of inhaling dust, which caused an exacerbation of the asthma condition.
We evaluate the medical testimony to define pneumoconiosis as a group of pulmonary diseases caused by the inhalation of dust incident to various occupations, which diseases becomes disabling as they develop into pulmonary fibrosis. Some types of pneumoconiosis, such as silicosis and asbestosis, classified according to the types of particles inhaled, are also enumerated in the statute.
Pneumoconiosis and asthma are different in that pneumoconiosis is only *249 contracted through prolonged and repeated exposures to dust particles, while asthma, which can occur without the inhalation of dust, is a response to sensitivity to certain conditions or phenomena.[1] See Jones v. U. S. Fidelity and Guaranty Co., 148 So.2d 309 (La.App. 3 Cir. 1963).
But the diseases have a similarity in that each can cause a crippling of the pulmonary function and can result in emphysema, a distention of the lungs caused by progressive obstruction of the pulmonary system.
Dr. Wagner diagnosed pneumoconiosis as the cause of aggravation of Homer’s asthmatic condition during the 1968 hospitalization, but stated specifically that Homer was not disabled from the disease of pneumoconiosis. He stated:
“When (I) used the term pneumoconio-sis, * * * I did not mean to infer that he had a permanent disability at the time from this, no.”
*******
“I don’t think he had a residual disability.”
******
“I felt in this patient that it was possibly the very early beginnings of this condition if he were constantly exposed to this dust that was obviously an irritant to his lungs.”
******
“A person that is sensitive to inhaling certain dust, if you keep them out of the environment, you would hope that they don’t have any progression of scarring in the lungs and fibrosis. This is fine and this may be true if he is, say, allergic only to one thing. But, as has been pointed out, he had problems with gypsum. He gave me the history with the watermelon and tomatoes set him off, meal dust, and obviously the soy bean dust. So this gentleman obviously had multiple allergies aggravated by possible multiple dusts, so he will undoubtedly have progression of his pulmonary problems and resultant scarring in his lungs and interstitial fibrosis.”
Furthermore, following an October 28, 1970 visit for backache and a November 19, 1970 visit for unrelated sinus problems, Dr. Wagner reported that Homer’s lungs were clear and that he was working as a gardner. On November 19, 1970, the last examination prior to trial, Dr. Wagner found that Homer was not having any respiratory difficulties and that he was not suffering from the disease of pneumoconi-osis.
The purpose of R.S. 23-1031.1 is to alleviate employees from the almost impossible task of proving “accident” in occupational diseases. LaCoste v. J. Ray McDermott & Co., Inc., 250 La. 43, 193 So.2d 779 (1967). However, the employee must prove that he is disabled because he contracted an enumerated disease as á result of the nature of his work.
We believe that Homer has only proved in this case that he is allergic to soy bean dust and that exposure to these particles brings on asthma attacks. Dr. Wagner summarized by observing that soy bean dust caused exacerbations or reoccurrences of Homer's underlying condition, bronchial asthma. He further stated that pneumoco-niosis causes permanent structural changes in the lungs, but repeatedly testified that he found no clinical evidence that fibrosis had developed in Homer’s case. He remarked that any structural lung changes would have to be followed by a physician who examined the patient and listened to his chest, obtained follow-up x-rays, and performed pulmonary function and blood-gas studies. Yet the specialist who performed these studies never mentioned pneumoconiosis, but specifically named bronchial asthma and ascribed Homer’s pulmonary difficulties to “this allergic obstructive disorder.”
*250 Although Homer’s physical condition was worsened during his employment at the grain elevator, it was not because of contracting pneumoconiosis. Rather, it was because an allergy to certain materials found on that job worsened a non-compen-sable disease from which Homer had suffered prior to his employment.
For these reasons, the judgment of the trial court is affirmed.
Affirmed.

. Homer also suffered from asthma after eating tomatoes or watermelon or after certain changes in the weather.